# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AURORA MARIN,<br><br>Defendant. | Case No. 13-cr-00121 JST (NC)<br><br>**Order of Release on Conditions Under 18 U.S.C. § 3142(c)** |

This Court held a detention hearing for Aurora Marin under 18 U.S.C. § 3142(f) on March 11, 18, and 22, 2013. Marin is charged by indictment with conspiracy to possess and possession with intent to distribute methamphetamine. This Order of Release specifies a combination of release conditions under the Bail Reform Act.

## PROCEDURAL HISTORY

The Court first ordered Marin's temporary detention under 18 U.S.C. § 3142(d) based on a determination that she was, at the time of the alleged offense, not a U.S. citizen or lawfully admitted resident and might flee. The government moved for detention, asserting that Marin posed a risk of non-appearance and a danger to the community if released. The government also proffered that an immigration detainer had been lodged against Marin and asserted that if the Court ordered her release, then the U.S. immigration authorities would immediately remove her from the U.S. to Mexico.

Shortly after entering federal custody, Marin gave birth to a son, who is now in the custody of Marin's boyfriend, Hamilton Rodas, and her daughter, Leslie Aurora-Marin.

The detention hearing was preceded by a Pretrial Services report prepared March 8, 2013. On March 11 and 18, the Court suggested that it was considering the release of Marin but needed more information on (i) immigration consequences, and (ii) possible sureties, so Pretrial Services prepared an addendum on March 20. The parties filed briefs in favor of and opposed to pretrial release. Dkt. Nos. 22, 23.

Pretrial Services ultimately recommended that the defendant be detained due to a risk of non-appearance but also proposed release conditions if Marin's immigration detainer were resolved, and additional bail resources became available. At the March 22 hearing, Pretrial Services Officer Allen Lew recommended that if the Court ordered Marin released with the recommended conditions (including two sureties and a custodian, with LMON electronic monitoring) then an appropriate bond amount would be $50,000. The government, while requesting that Marin be detained, did not object to the bond amount or to the specified conditions.

This Order sets forth this Court's analysis of the factors to be considered under the Bail Reform Act as to whether there are "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). As set forth below, this Court finds that the combination of conditions stated in the March 20 Pretrial Services addendum constitutes the "least restrictive" conditions that will reasonably assure the future appearances of Marin and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B). Accordingly, this Court orders that Marin be released on a $50,000 unsecured bond, with two sureties (Jose Diaz-Cuevas and Hamilton Rodas) and a custodian (her daughter, Leslie Aurora-Marin) and subject to standard conditions of release, plus the combination of special conditions set forth at the end of this Order.

## ANALYSIS OF BAIL FACTORS UNDER § 3142(g)

In evaluating whether a person charged with an offense should be detained, released, or released on conditions, the Court must take into account available information concerning: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. A finding that a defendant is a flight risk must be supported by a preponderance of the evidence. 18 U.S.C. § 3142(f); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Here, Marin is charged by indictment with two felony counts under the Controlled Substances Act, for conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine. As each of these charges is an offense for which the maximum term of imprisonment is ten years or more, it shall be "presumed," subject to rebuttal by the defendant, that no condition or combination of conditions of release will "reasonably assure" future appearances of Marin and assure the "safety of any other person or the community." 18 U.S.C. § 3142(e)(3).

In this case, the government asserts that there is no combination of conditions of release that would "reasonably assure" future appearances of Marin and assure the "safety of any other person or the community." On the other hand, Marin asserts that a significant bond with two sureties, a custodian, and electronic monitoring, can reasonably assure her appearance and the community's safety.

## IMPACT OF IMMIGRATION DETAINER

As a preliminary question, the Court considers whether it has discretion to release Marin, given that she is a citizen of Mexico and that the executive branch of the U.S. government, through Immigration and Customs Enforcement (ICE), has lodged an immigration detainer against her release. The District Court of Oregon recently

addressed this issue thoroughly in *United States v. Trujillo-Alvarez*, No. 12-cr-00469 SI, 2012 WL 5295854 (D. Or. Oct. 29, 2012). That Court, after examining the language and history of the Bail Reform Act, determined that "persons who are not citizens must be treated under the BRA like all other persons charged with an offense." 2012 WL 5295854, at *5. This Court agrees. Furthermore, this Court agrees that there is no prohibition on pretrial release created by the filing of an immigration detainer. *Id.* at *8. Rather, this Court must perform its detention or release analysis on a case-by-case basis depending on the facts of each case.

Finally, this Court, like the Court in *Trujillo-Alvarez*, concludes that the analysis of "failure to appear" as used in the Bail Reform Act is limited to the risk that the defendant may flee or abscond, that is, fail to appear by her own volition. If the government *prevents* a defendant's appearance, for example, by removing her from the country, that defendant has not "failed to appear" for purposes of violating the bail act. *Id.* at *8 (citing *United States v. Montoya-Vasquez*, No. 4:08-cr-3174, 2009 WL 103596 (D. Neb. Jan. 13, 2009)).

In sum, the Court concludes that it does have the discretion under the Bail Reform Act to assess whether Marin should be detained or released, despite the lodging of an immigration detainer.

1. <u>Nature and Circumstances of the Offense</u>

As set forth in the government's motion for detention, Dkt. No. 22 at 2-3, Marin was arrested on October 23, 2012, after a buy-bust operation that resulted in law enforcement officers seizing 884.1 grams of suspected methamphetamine. The government alleges that during the buy-bust, Marin handed a bag containing the drugs to a co-defendant, for sale to a confidential source (CS) working with law enforcement.

Of note, there were methamphetamine sales to the CS from co-defendant Silva in smaller quantities on October 4 and October 12, 2012. This fact pattern could form the basis of a sentencing entrapment defense, but the Court does not need to resolve that question for purposes of determining detention or release. *See United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009) (Sentencing entrapment "occurs when a defendant

Release Order
Case No. 13-cr-00121 JST (NC)          4

is predisposed to commit a lesser crime, but is entrapped by the government into committing a crime subject to more severe punishment.").

The government does not allege that guns were possessed by any of the defendants involved in the October 2012 drug transactions. No violence or threats of violence are alleged.

2. <u>Weight of the Evidence</u>

The weight of the evidence is the least important factor if argued as a basis to detain a defendant, in that Marin is presumed innocent. *Motamedi*, 767 F.2d at 1408. Here, the government asserts that it has "overwhelming" evidence that Marin possessed the bag that contained methamphetamine during the buy-bust. Dkt. No. 22 at 3. Agents recovered the methamphetamine and assert that they saw Marin holding and passing the bag shortly before the arrest. Less obvious is how the government will prove Marin knew what was in the bag and what her role in the offense was.

3. <u>History and Characteristics of the Defendant</u>

The most important factor in this case is Marin's physical and mental condition. Marin gave birth to a child approximately two weeks ago while in custody. That child is now being cared for by her boyfriend and her 19-year-old daughter. Marin has three other dependent children, ages 6, 15, and 16, who lived with her in Windsor before her arrest and are awaiting her return.

The government argues that Marin will take her infant and escape to Mexico if released. The Court finds that the weight of the available evidence tilts against this argument. Marin has lived in this country since 1987 and has spent 25 of her 41 years here. Her family is here. She has returned here from her native Mexico even after being removed by immigration authorities, and upon risk of being imprisoned for doing so.

Of concern to the Court are Marin's prior felony drug convictions, use of aliases and fake identification, and a lack of verifiable employment.

On balance, however, the Court finds that Marin's physical and mental condition rebuts the presumption of detention and indicates that she may be released in the interest of justice, with stringent conditions, without jeopardizing community safety.

### 4. Danger to the Community

There is no question that methamphetamine use is harmful to the community. There should be serious debate, however, as to whether mass incarceration and family-splitting deportations are an effective and fair deterrent to drug use. *See, e.g.*, Michelle Alexander, The New Jim Crow: Mass Incarceration in the Age of Colorblindness (New Press, 2010); *The House I Live In,* directed by Eugene Jarecki (film, 2012).

Here, the alleged offense does not involve violence or the threat of violence. And there is no history of violence by the defendant. The Court finds that Marin's danger, viewed in combination with all the other bail factors, can be reasonably mitigated by the combination of release conditions ordered.

### SPECIAL CONDITIONS OF RELEASE

1. The defendant shall reside at the specified address of her custodian in Windsor, California, where she shall be supervised by Leslie Aurora-Marin, subject to LMON electronic monitoring. Marin may leave home only for court purposes, attorney visits, medical appointments, and as directed by Pretrial Services.

2. The defendant's travel shall be restricted to the Northern District of California.

3. The defendant shall surrender all passports to Pretrial Services and shall not apply for any passports or other travel documents.

4. The defendant shall not possess any firearm, destructive device, or other dangerous weapon.

5. The defendant shall not use alcohol, and shall not use or possess any controlled substance without a legal prescription.

6. The defendant shall have no contact with co-defendants outside the presence of counsel.

7. The defendant shall not change residence without prior approval of Pretrial Services.

8. The defendant shall report to Pretrial Services in San Francisco upon release. Pretrial Services will coordinate the connection of the LMON monitoring.

The Court advised Marin, her sureties, and her custodian, of these conditions and the consequences for a failure to abide by the conditions, as required by 18 U.S.C. § 3142(h). These conditions and consequences were translated into Spanish. The complete conditions are set forth in a bond form signed by Marin, her sureties, and her custodian.

### TEMPORARY STAY

This release order is stayed until 6:30 p.m. on March 22, 2013, or until further Court order. A stay will enable the parties to appeal.

Finally, this Order does not reach the ultimate question posed by *Trujillo-Alvarez*: whether the executive branch must dismiss a criminal case with prejudice when the immigration authorities remove a defendant from the District during the prosecution of the case. 2012 WL 5295854, at *12. "Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Leal-Del Carmen*, 697 F.3d 964, 969 (9th Cir. 2012), quoting *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010). If Marin could give exculpatory evidence, the government may undermine the opportunity of Marin and her co-defendants to present a complete defense by removing her from the country. That question remains open in this case.

IT IS SO ORDERED.

DATE: March 22, 2013

NATHANAEL M. COUSINS
United States Magistrate Judge